State v. Balch.

## THE STATE v. BALCH et al., Appellants.

### Division Two, December 9, 1903.

1. **Criminal Statute.** A criminal statute is to be strictly construed in favor of the defendant and against the State.

2. **Statutory Construction.** In the construction of any statute, the history and reason of its enactment may always be invoked.

3. ————: WAGES: PAYMENT IN ORDERS. The purpose of the statute (sec. 8142, R. S. 1899) making it unlawful for "any person, firm or corporation to issue, pay out or circulate for the payment of wages of labor, any order, note, check, memorandum, token, evidence of indebtedness or other obligation, unless the same is negotiable and redeemable at its face value in lawful money of the United States, by the person, firm or corporation issuing the same," was to remedy the evil of the "truck system," that is, the methods resorted to by employers of labor whereby their employees were compelled to purchase their supplies and expend their wages for goods furnished by their employers.

4. ————: ————: ————: RENDERING ACCOUNT STATED. It was not the purpose of that statute to punish as criminal the action of a firm or company in auditing the account of a person about to quit its employment, and in rendering him an account stated showing the amount of its indebtedness to him.

5. **Employees:** ACCOUNT STATED: NOT UNLAWFUL: NEGOTIABILITY. The defendants were prosecuted for issuing this paper to an employee who was quitting their employment: "No. 330 on Maries River Works, June 13, 1902. A. J. Richardson, No. 92, has worked as laborer in the month of June, 9-10 ths of a day at $1.50 per day, $1.35. Balance due, $1.35. Why given, quit. Payable July pay day. M. Domigonuh, foreman. H. F. Balch & Co., contractors." *Held,* first, that this account or paper is not such as is contemplated by section 8142, Revised Statutes 1899; second, it was nothing more than a statement by the foreman of the company showing the amount of work Richardson had performed and the amount of money due him therefor; third, it was negotiable in the sense that it was assignable.

6. ————: PAYMENT IN NOTE OR CHECK: PLEADING. The statute (sec. 8142, R. S. 1899) does not prohibit an employer from paying his employee for labor performed by giving his note or check, provided it be negotiable and payable in money.

7. ———: PAYMENT NECESSARY: INFORMATION. Under the statute an employer is not guilty of a crime for issuing a note, check, memorandum or evidence of indebtedness to an employee unless such paper is issued or paid out in payment or for payment of his wages. And although the information may charge that it was issued in payment of wages, yet if it also sets out the instrument itself, and that shows on its face that it was not to be paid till a certain "pay day," it will not be held to charge payment.

8. ———: ———: REDEMPTION. If the instrument issued by the employer to his employee for labor performed, was not such a note, check, or token as is comprehended by the statute, but simply an account stated, the employer is guilty of no crime if he is not at all times ready to redeem it.

9. ———: ———: INSUFFICIENT INFORMATION. An information in such case, which does not charge that the person to whom the note, check, token, memorandum, etc., was issued, was in defendant's employment, is fatally defective. So also if it fails to state that it was issued to him for wages for labor performed by him *for defendant.*

10. Constitutional Question: APPELLATE PRACTICE. It is a serious matter to declare a statute unconstitutional, and the Supreme Court will not enter into a consideration of its constitutionality if the case can otherwise be completely disposed of.

Appeal from Osage Circuit Court.—*Hon. Wm. A. Davidson,* Judge.

REVERSED.

*Pope & Vaughan* for appellants.

(1) The information contains a count on each of sections 8142 and 8143, Revised Statutes 1899, and all the members of the partnership were convicted and fined on each count. Was this permissible under the statute? The penalty attaches to the violation of the whole article, not a part of it. The statute is directed against the person, firm or corporation, not against the persons composing the firm. In support of the defendants' position, they cite the following: State ex rel. v. Railroad, 146 Mo. 155; Rozelle v. Harmon, 103 Mo. 339; St. Charles v. Hackman, 133 Mo. 634; State v. Reid, 125

Mo. 43; State v. Bryant, 90 Mo. 534; State v. Howard, 137 Mo. 289; State v. Schuchmann, 133 Mo. 111; State v. Gritzner, 134 Mo. 512.   The paper, which is the subject-matter of the prosecution, is merely a statement of the account between H. F. Balch & Co., and the party therein mentioned, given by the foreman and clerk of said firm.   It was not given and did not purport to be given for payment of the wages of labor.   It stated on its face that it was not to be paid until next pay day. It was given that the principal might know how to settle on the next pay day.    There is no evidence that the paper was either given or received in payment.   The party to whom given did not testify, and none of the witnesses knew him.   It was not even identified.   (2) The action of the court in admitting the papers in the attachment suit, executed by attorneys, the conversations had by Vermoillon and Well with Meade and L. F. Balch, defendants' clerks, and the admission of the paper without identification, is so clearly error that it is only necessary to call the attention of the court thereto.   (3)   In support of the position that the act under which defendants were prosecuted is unconstitutional, the court is respectfully referred to following authorities: State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163.

*Edward C. Crow*, Attorney-General, and *Bruce Barnett* for the State.

(1)   The court committed no error in admitting evidence of the statements made by one Mead and L. F. Balch, agents of the defendants, that the time check was all right, and other statements of these agents showing that the check, described in the information, had been issued by the firm of H. F. Balch & Co., of which firm the defendants were the members.   These statements were made by the agents of the defendants while they were transacting the defendants' business, and related

to the very matters concerning which and in connection with which they were performing their duties as such agents at the time. The statements were, therefore, competent as part of the *res gestae.* Story on Agency, sec. 134; Mechem on Agency, sec. 714; Bergeman v. Railroad, 104 Mo. 86; Rogers v. McCune, 19 Mo. 557; Robinson v. Walton, 58 Mo. 384; Leahey v. Railroad, 97 Mo. 165; Western Boatmen's Ass'n v. Kribben, 48 Mo. 37; Union Savings Ass'n v. Edwards, 47 Mo. 449; Singleton v. Mann, 3 Mo. 464; Railroad v. O'Brien, 119 U. S. 90. (2) The court committed no error in admitting in evidence the pleadings filed in the attachment suit by the defendants herein, the plaintiffs in that proceeding. Though signed by their attorneys and not by them, they were admissible as their admissions. 1 Greenleaf, Ev., secs. 195, 527; Dowzelot v. Rawlings, 58 Mo. 77; Snyder v. Railroad, 112 Mo. 541; Bissell v. Ward, 129 Mo. 452; Bogie v. Nolan, 96 Mo. 85; Schad v. Sharp, 95 Mo. 573; Pomeroy v. Benton, 77 Mo. 64; Turner v. Baker, 64 Mo. 218. And this is the law without regard to whether the defendants knew that such papers were being filed or not, or knew the nature or contents of the same. Dowzelot v. Rawlings, supra. (3) The time check itself was introduced in evidence, and it was shown in evidence that the agents of the defendants in charge of the business recognized the check as having been issued and given out by the firm of H. F. Balch & Co. This is sufficient evidence to sustain the verdict of the jury on the point that the check was given out by the defendants. (4) There having been no arraignment in this case so far as the record shows, it is not contended by respondent that the judgment should be affirmed.

GANTT, P. J.—At the December term of the Osage Circuit Court, 1902, and on the 4th day of said month, the prosecuting attorney filed in said court the following information:

"In the Circuit Court, Osage County, Missouri, December term, 1902.

"J. William Vosholl, prosecuting attorney within and for the county of Osage, in the State of Missouri, under his oath of office and upon his best knowledge, information and belief, informs the court that on or about the 13th day of June, 1902, at the county of Osage, in the State of Missouri, the firm of H. F. Balch & Co., consisting of H. F. Balch, Leonard F. Motley and Fred K. Balch, did then and there willfully and unlawfully issue, pay out and circulate for payment of wages of labor performed by one A. J. Richardson, to the said A. J. Richardson, an order, check, note, memorandum, token, evidence of indebtedness and obligation, non-negotiable and not redeemable at its face value in lawful money of the United States. That said non-negotiable order, check, note, memorandum, token, evidence of indebtedness and obligation is in words and figures as follows:

" 'No. 330 on Maries River Works June 13, 1902,

" 'A. J. Richardson No. 92, has worked as laborer in the month of June.

9-10ths days at $1.50 per day................$   1.35
......days' board at .....................$......
......days' board at .....................$......
......days' board at .....................$......
......other accounts .....................$......
    Total to be deducted ..................$......
    Balance due .........................$   1.35
" 'Why given        quit
                " 'M. DOMIGONUH, Foreman.
" 'Payable July pay day.
                " 'H. F. BALCH & Co., Contractors,
                        " 'F. L. B.'

"That said order, check, note, memorandum, token, evidence of indebtedness and obligation, so unlawfully issued, paid out, and circulated for payment of wages

of labor performed by A. J. Richardson to the said
A. J. Richardson, was non-negotiable, and not redeemable at its face value in lawful money of the United
States, by the firm of H. F. Balch & Co., consisting of
H. F. Balch, Leonard F. Motley and Fred K. Balch,
who issued the same, against the peace and dignity of
the State.

"J. William Vosholl, prosecuting attorney within
and for the county of Osage in the State of Missouri,
under his oath of office and upon his best knowledge,
information and belief, informs the court that on or
about the 13th day of June, 1902, at the county of
Osage and State of Missouri, the firm of H. F. Balch &
Co., consisting of H. F. Balch, Leonard F. Motley and
Fred K. Balch, did then and there issue and cause to
be issued, pay out and circulate for payment of wages
of labor performed by one A. J. Richardson, to the said
A. J. Richardson, an order, note, check, memorandum,
token, evidence of indebtedness and obligation which
was non-negotiable.

"That said order, note, check, memorandum, token,
evidence of indebtedness and obligation is in words and
figures as follows :

"'No. 330 on Maries River Works June 13, 1902,

"'A. J. Richardson No. 92, has worked as laborer
in the month of June.

9-10ths days at $1.50 per day.................$  1.35
......days' board at .......................$......
......days' board at .......................$......
......days' board at .......................$......
......other accounts .......................$......
    Total to be deducted ...................$......
    Balance due ...........................$   1.35

" 'Why given        quit
                  " 'M. Domigonuh, Foreman.
" 'Payable July pay day.
                  " 'H. F. Balch & Co., Contractors,
                              " 'F. L. B.'

"That said order, note, check, memorandum, token, evidence of indebtedness and obligation is endorsed on the back, 'A. J. Richardson.' That on or about the first day of August, 1902, at said county of Osage in the State of Missouri, the said firm of H. F. Balch & Co., consisting of H. F. Balch, Leonard F. Motley and Fred K. Balch, did then and there willfully and unlawfully fail to be at all times during the business hours of the day, prepared to redeem and failed to redeem the above described order, check, note, memorandum, token, evidence of indebtedness and obligation, when presented at their place of business or office in Osage county, Missouri, at its face value in good and lawful money of the United States, as demanded by L. Well, who had become the owner of the same for value and was the holder, although the said order, note, check, memorandum, token, evidence of indebtedness, and obligation, was issued, paid out and circulated, by the firm of H. F. Balch & Co., consisting of H. F. Balch, Leonard F. Motley and Fred K. Balch, in payment of wages of labor performed by A. J. Richardson to the said Richardson.

"That the said above set-out-note, order, check, memorandum, token, evidence of indebtedness, and obligation, so issued as aforesaid by the firm of H. F. Balch & Co., consisting of H. F. Balch, Leonard F. Motley and Fred K. Balch, for the payment of wages of labor performed by one A. J. Richardson to the said A. J. Richardson was on or about the first day of August, 1902, presented at the place of business and office in Osage county in the State of Missouri of the firm of H. F. Balch & Co., consisting of H. F. Balch. Leonard F. Motley and Fred K. Balch, during the business hours of the day for payment in good and lawful money of the United States at its face value and payment so demanded by L. Well, who had become the owner of the same for value, and said firm of H. F. Balch & Co., consisting of H. F. Balch, Leonard F. Motley and Fred

K. Balch, unlawfully and willfully did refuse and fail to pay in good and lawful money of the United States during the business hours of the day said order, note, check, memorandum, token, evidence of indebtedness or obligation when presented and payment demanded in good and lawful money of the United States by L. Well who had become the owner of the same for value and was the holder, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State."

A motion to quash was duly entered by defendants at the June term, 1903, which said motion is in the following words:

"The defendants now come and move the court to quash the information filed herein against them for the reason that the same does not charge any crime against them or either of them.

"And for the further reason that the said information is vague, indefinite and uncertain in its terms, in this, that it does not charge at what day or at what hour of the day or between what hours of the day the instrument set out in the information was presented for payment or to whom presented, nor does the information charge in sufficient terms or with sufficient distinctness that the office or place of business of the defendants was in Osage county or where the same was located or kept.

"And for the further reason that the first count in the information upon its face shows that the defendants did not violate the provisions of article 3, chapter 121, of the Revised Statutes of 1899, of this State, upon which the information is based.

"The order or writing set out in the information is not the kind of an order declared against by the statutes, and for the further reason that the information does not charge the defendants, or either of them, with violating the said article 3 of chapter 121 of the statutes aforesaid, and for the reason further that the

said article 3 of chapter 121, Revised Statutes 1899, of this State, is in violation of the terms of section 10 of article 1 of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts.

"And for the further reason that the said article, under the provisions of which this information is framed, is in violation of the Constitution of the State of Missouri and the Constitution of the United States in this, to-wit:

"1.   That all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry.

"2.   That no person shall be deprived of his life, liberty or property without due process of law.

"3.   That they violate that part of the fourteenth amendment to the Constitution of the United States, which declares 'nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person the equal protection of the law.'

"Because sections 8142, 8143, 8144, Revised Statutes of Missouri of 1899, upon which the information herein is based, are unconstitutional and void as being in violation of the constitutional provision 'that no person shall be deprived of life, liberty or property without due process of law.'

"The defendants especially move the court to quash the second count in the information charging that they did 'issue and caused to be issued' a certain order, note, check, memorandum, token, evidence of indebtedness and obligation therein described and set out, for the reason that the law does not by its terms declare against or make or attempt to make it a criminal offense 'to cause to be issued' paper of the character therein described.

"And further, because the paper or obligation defendants are charged with issuing and circulating is not, by its terms, redeemable in anything but lawful money

of the United States at its face value, and by its terms is negotiable when properly indorsed by the person to whom given, which is not averred in any count in the information.

"And further, the defendants move the court to quash the second count in the information for the reason that the charges against them therein do not conform to or follow the statutes under which it is drawn, in this, that the statutes, if constitutional, only require the person issuing the obligation therein mentioned to be prepared at all times during the business hours of the day to redeem such order, note, check, memorandum, token, evidence of indebtedness or other obligation, when presented at their place of business or office, at their face value, in good and lawful money of the United States or in goods at the option of the holder, when the charge is that the writing, whatever it is, was issued on the 13th day of June, 1902, was indorsed on the back 'A. J. Richardson,' that about the first day of August, 1902, the firm did then and there fail to be at all times during the business hours of the day prepared to redeem and failed to redeem said order when presented at their place of business or office 'in Osage county, Missouri,' at its face value in good and lawful money of the United States, as demanded by L. Well, who had become the owner of the same for value and was the holder, without any reason being assigned for not presenting the same sooner than August 1, 1902, and without charging defendants with failing to be prepared to redeem according to the terms of the obligation which on its face expressed it to be payable July pay day.

"And further, because it is nowhere in either of said counts alleged that the writing was issued for labor performed for defendants, but it on the contrary is averred that the same was issued to A. J. Richardson 'in payment of wages of labor performed by A. J. Richardson to the said Richardson.'

"And the defendants move the court to quash both counts in the information for the reason that they are not informed therein of the nature and cause of the accusation against them as required by section 22, article 2, of the Constitution of the State of Missouri, in this, that the information does not inform them of what provisions of article 3, chapter 121, Revised Statutes 1899, they are charged with violating with sufficient certainty to enable them to prepare their defense.

"And further because they are not charged in either count with acts that would constitute a violation of said article."

The motion to quash was overruled, and defendants excepted.

The case then came on for trial before the court and a jury, the defendants having never pleaded to the information. The State, to sustain the issues on its part, introduced H. C. Finck, circuit clerk, who identified the petition, affidavit and attachment bond in a suit of H. F. Balch & Co., against H. H. Wade, filed on the 20th of June, 1902, in the circuit court of said county, and then offered to introduce the papers for the purpose of proving that defendants were partners doing business as H. F. Balch & Co. This was objected to because the papers were incompetent for that purpose, not having been executed by the defendants, or either of them, but all executed by their attorneys, as shown on the face thereof; this objection was overruled, and defendants excepted. The State then introduced Charles Vermoillen, and in the course of his examination, he was allowed, over defendants' objection, to detail conversations had with "L. F. Balch and one Mead, clerks," in absence of defendants, to which exceptions were made at the time. The State was also allowed to introduce in evidence, without proof of execution, a paper which was a copy of the instrument set out in the information, to which defendants objected and excepted at the time.

L. Well was also introduced by the State, who claimed to be the owner of the paper, and said he got it from a saloon-keeper at Richfountain, who was buying such paper for him; that he did not know Richardson, never saw him, did not know his handwriting, or that of defendant, and he likewise was allowed to detail, over defendants' objections, conversations had with clerks at railroad camps, claimed to be officers of defendants.

Both witnesses gave the date of demand for payment at the camps or offices as July 8, 1902, when the charges in the information is that the demand was made on or about August 1, 1902.

This substantially was the testimony of the State, and when the State closed, defendants asked an instruction in the nature of a demurrer to the evidence, which was refused, and to which exceptions were then taken. The defendants then asked the court to instruct the jury as follows:

"1. The court instructs the jury that under the information and evidence in this case the defendant can not be convicted and they will return a verdict of not guilty.

"2. The court further declares the law to be that the statute, sections 8142, 8143 and 8144, Revised Statutes of 1899, is unconstitutional and void, as being in violation of the constitutional provisions that no person shall be deprived of life, liberty or property without due process of law, and for that reason the jury will find the defendants not guilty.

"3. The court declares the law of this case to be that it is not unlawful to issue or give out for labor the instrument of writing read in evidence to the jury."

Which instructions were refused and defendants excepted at the time.

The court instructed the jury as follows:

"The State of Missouri, plaintiff,
        vs.
"H. F. Balch et al., defendants.

    "In the Circuit Court, June term, 1903.

    "For the purpose of this case under the evidence given, the court declares the law as follows:

    "The order, note, check, memorandum, token, evidence of indebtedness, set out and described in full in the first count in the information and read in evidence to the jury, is such a paper and writing as is forbidden by law to be paid out or put in circulation by anyone for the payment of wages due for labor; if the jury believe from the evidence beyond a reasonable doubt that the defendants at any time within one year next before the filing of the information in this case, being a firm under the style and name of H. F. Balch & Co., at the county of Osage and State of Missouri, intentionally, for the payment of wages of labor, did pay or did cause to be paid out or did issue, or did cause to be issued, or did circulate or did cause to be circulated, said check, or token, or evidence of indebtedness read in evidence as aforesaid, then the jury will find the said defendant guilty in manner and form as charged in the information, and will assess the punishment of such defendants at a fine of a sum not less than fifty nor more than five hundred dollars; or by imprisonment in the county jail for a period not exceeding twelve months, or by both such fine and imprisonment.

    "And the court further declares that if from the evidence beyond a reasonable doubt the jury shall believe that on the 8th day of July, 1902, at the place of business and office of the defendants in the county of Osage, in the State of Missouri, one L. Well, was then and there the owner and holder of the check, or evidence of indebtedness described in full in the first count of the information and read in evidence to the jury, and

that said check, token, or evidence of indebtedness, the defendants being members of a firm, under the name and style of H. F. Balch & Co., had within one year next preceding the filing of this information, intentionally issued or caused to be issued, paid out, or caused to be paid out, circulated or caused to be circulated said check, token or evidence of indebtedness aforesaid, for payment of wages due for labor, and as such holder and owner at said place of business, said L. Well did present to defendants and to their representatives at such place of business about the hour of eleven o'clock in the forenoon of said day, demanding payment of the sum due on said check and token and evidence of indebtedness, and payment was by defendants or their representatives then refused, then the jury will find the defendants guilty in the manner and form as charged on the second count in the information and will assess the punishment of each defendant at a fine of the sum of not less than fifty nor more than five hundred dollars or by imprisonment in the county jail for a period not exceeding twelve months, or by both such fine and imprisonment.

"The law presumes the innocence of all persons charged with crime, and if the jury have a reasonable doubt of the guilt of the defendants the jury shall acquit; but a doubt to authorize an acquittal on that ground should be a substantial doubt, touching the guilt of defendants, and not a mere possibility of innocence."

To the giving of which defendants objected and excepted at the time.

The jury returned the following verdict:
"State of Missouri,

vs.

"H. F. Balch & Co.

"We, the jury, find defendants guilty on the first count and assess their punishment at four hundred and twenty-five dollars each.

"And we find the defendants guilty on the second count in the information and assess their punishment at four hundred and twenty-five dollars each.

"FRED EBERT, Foreman."

And thereupon the following judgment was rendered:

"State of Missouri, plaintiff,

vs.

"H. F. Balch, F. K. Balch and L. F. Motley, defendants.

"Failure to redeem checks for labor, etc.

"And now comes the jury herein, Wm. Owens, John C. Laughlin, Fritz Griechen, D. L. Haynes, Fritz Held, August Stock, Joseph Chapman, Earbst Placial, Fred Schmitz, Fred Ebert, Wm. Dahms and John Stock, and return the following verdict:

" 'We, the jury, find the defendants guilty on the first count and assess their punishment at $425 each, and we find defendants guilty on the second count in the information and assess their punishment at $425 each.

" 'FRED EBERT, Foreman.'

"It is thereupon ordered and adjudged by the court that the State of Missouri have and recover (for the benefit of the public school fund) from defendants, H. F. Balch, L. F. Motley and F. K. Balch, the sum of $425 each, the amount of the fine in the first count in the information, as well as all the costs in the case laid out and expended.

"And it is further ordered and adjudged by the court that the State of Missouri have and recover (for the benefit of the school fund) from defendants, H. F. Balch, L. F. Motley and F. K. Balch, the further sum of $425 each, the amount of the fine in the second count in the information, as well as all costs in the case laid out and expended."

On the same day defendants filed motion for a new trial as follows:

"In the Circuit Court of Osage county, Missouri, June term, 1903.

"State of Missouri, plaintiff,

vs.

"H. F. Balch, L. F. Motley, and F. K. Balch, defendants.

"Now come the defendants and move the court to set aside the verdict therein rendered and grant them a new trial for the reasons following:

"1.   The court erred in permitting the State, over the objections of the defendants, to introduce improper, incompetent and irrelevant testimony to the great prejudice and injury of the defendants.

"2.   Because the court allowed and permitted the State, over the objections of the defendants, made at the time, to introduce hearsay testimony.

"3.   Because the court refused to quash the information against the defendants as prayed and moved by defendants and overruled defendants' motion to quash the information, and because no issue was joined in the case.

"4.   Because the court refused to give an instruction in the nature of a demurrer to the testimony as asked by the defendants at the close of the testimony offered by the State.

"5.   Because the court refused instructions numbers 1, 2 and 3, asked by the defendants, to be given to the jury for their guidance.

"6.   Because the court gave wrong, improper and harmful instructions to the jury, over the objections of the defendants made at the time.

"7.   Because all the instructions given by the court to the jury are wrong and improperly directed the jury as to their duty and were given against the defendants' objections made at the time they were given.

"8.   Because the verdict is against the law and the evidence and should have been for the defendants, and because there was no evidence to sustain the verdict.

"9.   Because under the information there should not have been any verdict against these defendants as individuals, as there is no charge against them as such or any evidence to sustain the charge against either one of them."

The motion was overruled and defendants excepted. Defendants on same day filed a motion in arrest as follows:

"In the Circuit Court of Osage county, Missouri, June term, 1903.

"State of Missouri, plaintiff,

    vs.

"H. F. Balch, L. F. Motley and F. K. Balch, defendants.

"1.   The defendants now come and move the court to arrest the judgment herein for the reason that their information on which they were tried does not charge any crime against the laws of this State.

"2.   Because the statute under which the defendants were proceeded against is contrary to the provisions of the Constitution of the United States and the State of Missouri, and therefore void and of no force and effect.

"3.   Because upon the face of the record the defendants are not charged with or guilty of any violation of the laws of this State.   And because there was no issue joined for the court or jury to try."

## I.

Various errors have been urged for a reversal of the judgment of the circuit court.

The statute upon which this prosecution is predicated was enacted in 1895.   [Laws 1895, p. 206; R. S. 1899, secs. 8142, 8143, 8144 and 8145.]

Section 8142 provides that "it shall not be lawful for any person, firm, or corporation in this State to issue, pay out or circulate *for the payment of wages of labor,* any order, note, check, memorandum, token, evi-

State v. Balch.

dence of indebtedness, or other obligation, unless the same is negotiable and redeemable at its face value in lawful money of the United States, by the person, firm or corporation issuing the same."

Section 8143 provides that "all persons, firms or corporations issuing or circulating any such order, note, check, memorandum, token, evidence of indebtedness, or other obligation, shall be at all times during the business hours of the day prepared to redeem, and shall redeem, all such orders, notes, checks, memorandum, tokens, evidences of indebtedness, or other obligation, when presented at their place of business or office, at their face value, in good and lawful money of the United States, or in goods, at the option of the holder."

Section 8144 provides that a violation of the foregoing sections shall constitute a misdemeanor, and affixes the punishment at a fine, or imprisonment in the county jail.

At the threshold arises the question, is the account or exhibit incorporated in two counts of the information *such* an order, note, check, memorandum, token, evidence of indebtedness or other obligation as is contemplated by section 8142?

That it is not an order, note, check or token, is undeniable.

Is it such a memorandum or evidence of indebtedness or obligation as said section contemplates?

In the construction of any statute, the history and reason of its enactment may always be invoked in its construction. The underlying purpose of this act unqustionably was to remedy what the Legislature deemed was an evil in the company stores or "truck system" resorted to by corporations and individuals employing laborers whereby the employees were practically compelled to purchase their supplies and expend their wages for goods and supplies furnished by their employers, greatly to the disadvantage of the employee.

It was obviously intended also to obviate the con-

stitutional objections which this court, in State v. Loomis, 115 Mo. 307, pointed out to sections 7058 and 7060, Revised Statutes 1889, and for which those sections were declared unconstitutional.

The Legislature in this act has avoided one of the grounds on which the Loomis case rests, to-wit, class legislation.

This act, unlike 7058 and 7060, Revised Statutes 1889, is not restricted to ''corporations or persons engaged in mining and manufacturing,'' but applies alike to *all persons, firms and corporations.* It was well known that, as in the Loomis case, different mining and manufacturing companies had resorted to a practice of issuing in payment of wages, scrip, punch-outs, orders and tokens, to their employees, which were redeemable only in goods, wares and merchandise at the stores of said companies, and on their face *non-negotiable* and uncollectible in money at their face value.

Accordingly, this act was passed to correct these practices. It is to be noted, first, that it prohibits any person, firm or corporation from issuing any such order, note, check, etc., *for the payment of wages of labor,* unless the same is negotiable and redeemable at its face value in lawful money by such person, firm or corporation.

This is a criminal prosecution and the act is to to be strictly construed in favor of the defendant and against the State.

Was it the purpose of the Legislature to say that no person, firm of individuals or corporation in this State, if one of their employees quit their service at any time and for any good reason, in auditing his account could render him an account stated to the time he quit without subjecting such person, firm or corporation to a criminal prosecution under this statute?

Such a construction in our opinion would be utterly unreasonable and subversive of all the business habits

of our people. The statute is not fairly susceptible of such a construction.

Men must be allowed to adjust their differences.

Take the case before us. There is not the slightest evidence that the defendants issued this statement of Richardson's account to him as and for payment of their indebtedness to him. It was nothing more or less than a statement by one of their foremen that Richardson had worked nine-tenths of a day in June at the rate of $1.50 a day, and that the amount due him was $1.35, and that it was given to him because he had quit work, not issued, paid out or circulated in *payment* nor for *payment* of his wages. It simply showed what amount of work he had done and what was due him therefor. That such an account was negotiable in the sense that it was assignable there can be no doubt. There was nothing on it to restrict its assignment, and nothing to indicate it was not to be paid in lawful money at its face value.

The statute does not prohibit an employer from giving his note or check for wages earned by his employee provided such note or check is negotiable and redeemable in money, and without doubt he is not guilty of a violation of this statute unless he does issue or pay out such note, check, memorandum, or evidence of indebtedness *in payment* of, or *for payment* of such wages. While in this case the pleader charges such was the case, he further sets out the exact instrument which he alleges was issued to Richardson and thus has restricted his charge to that, and as we have seen it is not such a note, check or other evidence as was contemplated by the Legislature, but is in substance only a certificate by a foreman of the amount of work done and the value of it for the information of his employer when pay day arrived. On the contrary it states on its face it is payable the next pay day. The second count, based as it is on the same account stated, obviously is no better than the first, because unless it was a note, check

or obligation within the meaning of the statute, the defendants were not required to be ready at all times to pay it.

## II.

But again. The information is fatally defective as a criminal pleading. In such case nothing is left to intendment.

Now, there is no allegation that Richardson was in the employment of defendants or that the note, check, etc., was issued to him for wages for labor, performed by said Richardson *for them.* The underlying purpose of the act is to protect employees from unjust practices of their employers. The pleader has not brought his case within the statute. While not insisted on by defendants, we observe that this information is not verified in any manner as required by sections 2477 and 2478, Revised Statutes 1899, as amended by the Acts of 1901 (Laws 1901, pp. 138 and 139). [State v. Bonner, 178 Mo. 424.]

## III.

We are asked to declare the said sections unconstitutional, but it is always a serious matter to declare an act of the General Assembly unconstitutional, and it should never be done save for grave reasons. Inasmuch as this case can be disposed of without passing on the constitutionality of the act and as in no event can this prosecution be maintained, we must decline to go into the constitutionality of the sections mentioned.

The judgment of the circuit court is reversed and the prisoners discharged.

*Burgess* and *Fox, JJ.,* concur.