STATE OF MISSOURI, Respondent, v. J. J. FITZGERALD, Appellant.

**Kansas City Court of Appeals, January 25, 1886.**

1. CRIMINAL LAW—LIBEL—PROOF OF—NAMES OR WORDS IDEM SONANS. "In case of a written or printed libel, the proof must agree with the indictment in every particular essential to the identity, such as dates, names of persons, and the precise words used, and a variance in any of these particulars is fatal. But a literal variance alone is not fatal, when the omission or addition of a letter does not make it a different word, and a diversity in the spelling of a name is not material where it is *idem sonans*." 1 Greenl. Evid., sect. 167.

2. ——— ——— PROOF OF UNDERSTANDING OF WITNESSES — CASE ADJUDGED.—Where the word fraud or "frod," was written by the proprietor of a hotel, in immediate connexion with the name of one

of his guests on the hotel register, and he had called the attention of divers parties to what he had done, it was proper to ask of the witnesses to whom he exhibited it, what they understood it to mean.

APPEAL from Johnson Circuit Court, HON. JOHN E. RYLAND, Judge.

*Reversed and remanded.*

The case is sufficiently stated in the opinion of the court.

S. P. SPARKS, for the appellant.

I.   In cases of written or printed libel the proof must agree with the indictment in every particular essential to the identity, and a variance in any of these particulars is fatal. Greenl. Evid., sect. 167 (Ed. 1868); 1 Bishop Crim. Proc., sect. 530 (Ed. 1880). Neither "frod," nor "frad," is *idem sonans* with *fraud*, set out in the information. The information should have averred precisely the word as it was written and explained by *innuendoes*. Greenl. Evid. *supra;* Bishop Crim. Proc. *supra*. The same rule applies to words spoken in slander. *Christial v. Cring*, 80 Mo. 367.

II.   The court erred in permitting witnesses to testify what they understood the word, as written in the hotel register, to mean. The *innuendoes* cannot extend the sense of the words beyond their proper meaning—they are not the subject of proof. Whether the libel relates to the matters so averred, is a question of fact for the jury. Greenl. Evid., *supra*, sect. 175; Bishop Crim. Proc., sect. 793; Abbott's Trial Evid. 664; *Cooper v. Greeley*, Denio, 819.

III.   The state offered no evidence as to the falsity of the alleged libelous matter. The laws presumed the defendant innocent until proven guilty. Bishop Crim. Proc., sect. 1046–1050. The instructions given for the state all ignored the element of falsity. The instruction refused to defendant was the embodiment of the law.

B. G. BOONE, Attorney-General, and EMMET PHILIPS, for the respondent.

I. The objection to the witnesses testifying what they understood the word fraud to mean was properly overruled. The mere writing of the word would not be actionable *per se*, and only by an inquiry as to the meaning it conveyed to those who saw it, could a conclusion be arrived at by the jury as to the intention of the writer.

II. There was not a fatal variance between the indictment and the proof. Although the word "frod" was used, the meaning and signification was the same as fraud, besides some of the witnesses say the writing was fraud. In either case this court will not interfere with the verdict.

III. The instructions for the state presented the case fully and fairly to the jury, and those refused were properly refused, as they asked only what had already been given. *Harrison v. R. R.*, 74 Mo. 364; *Noble v. Blount*, 77 Mo. 235.

ELLISON, J.—The defendant was indicted, tried and convicted for a libel on one A. F. Dean, who was an insurance agent, registered at defendant's hotel, known as the "Bell House." The registry, as appears from the charge, was "A. F. Dean, of St. Louis." The libel consisted in writing the word "fraud" after the registry, so that it appeared upon the book as "A. F. Dean, St. Louis, Fraud."

The evidence tended to show that Dean was compelled to leave the hotel almost immediately after he had registered his name on account of the offensive conduct of defendant. That defendant wrote the word "fraud" on the register and then called the attention of divers parties to what he had done; among others, to those mentioned in the indictment. Evidence was admitted over defendant's objection as to what the witnesses understood to be meant by the word fraud at the place and in the connection in which it appeared. There was likewise evidence

tending to show that the matter written by defendant was not fraud, but "frod," or "frad," and defendant himself testified that he wrote "frod;" that it was a private mark of his own which he used to indicate that the party against whose name it was written had left the hotel without paying his bill. To the question put to several witnesses as to what they understood by the writing, they answered that they understood it to mean that Dean was not honest; a dead beat, a rascal, swindler; a term of reproach, etc.

The instructions given for the state we regard as substantially correct, with the exception of the word real in the instruction defining reasonable doubt—the use of the phrase "real substantial doubt" was specially disapproved by the supreme court in *The State v. Owen* (79 Mo. 617), which has since been affirmed in *State v. McNally*, not yet reported.

I do not think that even though the word as written in the register was "frod," instead of fraud, as charged in the indictment, that it should be deemed fatal to the prosecution. It is true that "in case of a written or printed libel, the proof must agree with the indictment in every particular essential to the identity, such as dates, names of persons, and the precise words used—a variance in any of these particulars being fatal. But a literal variance alone is not fatal when the omission or addition of a letter does not make it a different word. Thus, "undertood" for "understood," "reiceod" for "received," and the like are immaterial variances, and a diversity in the spelling of a name is not material where it is *idem sonans*," etc. 1 Greenl. Evid., sect. 167. "Frod" is not the proper way of spelling "fraud," nor is "frad," yet each may be pronounced the same as fraud. The rule laid down by Greenleaf is correct, and I see nothing in that rule to prevent a bad speller from being held accountable for his deeds.

Under the circumstances in this case, considering where the libel was written, and how published, I think it was proper to ask of the witnesses to whom defendant exhibited it, what they understood it to mean. Odgers on Slander and Libel, 538.

For the error in the instruction as to reasonable doubt, the judgment is reversed and the cause is remanded. All concur.