## THE STATE v. SCHNETTLER, Appellant.

Division Two, March 23, 1904.

1. **INFORMATION: No Affidavit.** Since the amendment of the statute of 1901 the information in a felony case must be supported by the affidavit of the prosecuting attorney or of some witness competent to testify or be based upon the affidavit of some person filed with the clerk.

2. ——: ——: **Amendment.** The omission to verify the information is simply an irregularity, which does not render it or the proceedings under it void, and hence the affidavit may be supplied by amendment at any time before trial.

3. ——: ——: **Waiver.** If no objection is made on or before trial that the information is not supported by affidavit, that objection is waived, and cannot be made on appeal.

4. ——: ——: **Filed With Clerk: Point How Raised.** The language used in the motion to quash was: "The information herein is not predicated upon an affidavit filed with the clerk of the court or deposited with the circuit attorney or sworn to by a person who has knowledge of the commission of the offense herein charged against the defendant;" and the statute requires the prosecuting attorney to file an information upon the affidavit, and then to file the affidavit with the information. *Held*, first, that the information should show on its face, when such is the case, that it is predicated upon the affidavit filed with it; and, second, no such showing appearing on the face of the information, the language used in the motion to quash was sufficient to show that the information was not based on the affidavit of some competent witness.

5. ———: ———: **Presumption That Affidavit Was Filed.** Where the defendant offers no evidence to show that the affidavit was not filed and the record is silent on the point, it will not be presumed that an affidavit was filed. Where the record does not show the filing of the affidavit and the filing of an information based thereon, it does not devolve on defendant to offer evidence to show that no affidavit was filed.

6. ———: **Sufficiency: Bribing.** The information in this case is held to sufficiently charge that defendant and certain other members of the House of Delegates were guilty of bribery in entering into an agreement with a certain street railway that they would cast their official votes in favor of the passage of a bill granting to the company a franchise in consideration of the payment to them of $75,000 by the railway company.

7. **EVIDENCE OF OTHER CRIMES: Exception to Rule: Corroboration: Explanation: Bribery.** In a trial of defendant for bribery under an information which charged that he was a member of a combine of nineteen members of the House of Delegates whose spokesman had agreed with a railroad for himself and the other eighteen that they would vote to grant the railroad a franchise in consideration of the payment to them of $75,000, the State was permitted to prove that the defendant had received $2,500 as a bribe to induce him to cast his official vote in favor of a bill previously pending before the same house affecting the lighting of the public streets; and the evidence shows that about the time of the organization of the House of Delegates a combination was entered into between various members of the House, including the defendant, for the purpose of controlling legislation by the members of the combine demanding and receiving money for the passage or defeat of certain bills that might be brought before them, to be paid by the individuals or corporations interested therein, and that arrangement was not only in reference to the lighting bill, for his vote on which defendant did in fact receive $2,500, but applied to all other matters of a similar character which might come before the House. *Held,* that the evidence was admissible as showing that the crime charged was within the scope of the purpose for which the conspirators were banded together, and to explain and corroborate other testimony which bore directly upon the commission of the crime.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Douglas,* Judge.

REVERSED AND REMANDED.

*S. S. Bass* and *Willis H. Clark* for appellant.

(1)   Defendant's motion to quash the information herein, or the motion to arrest the judgment upon the ground that the information was not verified either by the oath of the circuit attorney or of some person competent to testify as a witness, or upon the ground that it was not based upon the affidavit of some private person filed with the clerk of the court as required by law, should have been sustained.   State v. Bonner, 178 Mo. 424; State v. Balch, 178 Mo. 392. (2) The motion to quash the information, because it is indefinite, vague and uncertain, and because it charges no offense under the laws of the State of Missouri, should have been sustained. The information in this case is in its charging parts on all fours and to all intents a copy of the indictment in the case of the State of Missouri v. Meysenburg, 171 Mo. 1.   (3)   The evidence of the Murrells and Geo. F. Robertson, respecting other transactions indicating the commission of other offenses, should not have been allowed in evidence against the defendant herein.   This evidence is not within the exceptions.   State v. Spray, 174 Mo. 569.   (4)   The instructions given by the court are broader than the information, and comment upon the evidence.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1)   The information in this case directly charges that the agreement was made by the defendants therein named and with the Suburban Railway Company that the said company would pay to the said defendants the sum of seventy-five thousand dollars upon consideration and agreement that they, the defendants, would cast their official vote as members of the House of Delegates in favor of the passage of said Council Bill No. 44.   By this charge nothing is left for implication or intendment.

It is plain, clear and direct, and fully meets all criticisms pertinent to the indictment in the Meysenburg case. (2)   It was not error for the court to permit the State to prove that the defendant had received $2,500 as a bribe to induce him to cast his official vote in favor of a bill previously pending before the House of Delegates affecting the lighting of the public streets of St. Louis, commonly known as the "Lighting Bill," and in this connection known as the "Lighting Deal." When this evidence is considered along with the defense interposed that the combination was for lawful purposes, we see no reason why its admissibility should be attacked, because it brings into question the propriety and legality of the purpose and object of the combine, and therefore bears directly upon the three elements essential to the case at bar, to-wit: motive, intent and identity.   State v. Wolfe, 15 Mo. 168; State v. Mix, 115 Mo. 153; Tracy v. McKinney, 82 Mo. App. 506; State v. Rosenburg, 162 Mo. 558; State v. Philips, 160 Mo. 503; Wharton's Crim. Evid. (9 Ed.), 48.   The evidence, showing that the combination was for the purpose of enabling the members of the combine to prostitute their respective offices, was competent to show the real purposes of the combine. And the evidence that the defendant by means of the combine had previously received money in payment for his vote upon the lighting deal, would be competent to connect him with the crime charged in this information, and constitute him in part the principal of Kratz and Murrell, in the execution of their criminal agreement with Stock and Turner.   State v. Meyers, 82 Mo. 558; State v. Phillips, 160 Mo. 506; State v. Bain, 88 Mo. 604; State v. Minton, 116 Mo. 605; State v. Boss, 136 Mo. 103; 1 McClain's Crim. Law, sec. 615.   The admissibility of the testimony in question falls within the line of the rule in criminal law that where other property is stolen at the same time (through the same unlawful combine, conspiracy or means) by defendant, such facts may be shown in evidence as a part of the *res gestae,*

although such evidence might, as in this case, be an independent crime. McClain's Crim. Law, sec. 615; People v. Ross, 65 Cal. 104; People v. Griffin, 86 Ga. 257; State v. Flynn, 124 Mo. 480.   (3)   No serious objection is made to the instructions.   It is true defendant's counsel, in their brief, contend that the instructions given by the court are broader than the information and comment upon the evidence.   No particular reference is made to such instructions as are claimed by the defendant to be broader than the information and which comment upon the evidence.

*Joseph W. Folk*, Circuit Attorney, also for the State.

(1)   Even if the procedure provided for by sections 2477 and 2478, Revised Statutes 1899, be mandatory, there is nothing in this record to show such procedure was not had.   Under sections 2477 and 2478 informations may be predicated on (a) verification by oath of prosecuting attorney; (b) by the oath of some competent witness; and (c) affidavit filed with the clerk of the court by some person having knowledge of the facts.   The affidavit filed with the clerk certainly is no part of the information.   The defendant filed a motion to quash, saying: 1.   The information was not sworn to by the circuit attorney.   2.   Because no affidavit was filed with the clerk.   It will be observed that nothing was said in this motion as to the information not being based on affidavit of some competent witness.   The two grounds of objection stated in the motion might be true, and still the information may have been based on the affidavit of a competent witness.   The situation is the same as if the law only provided one basis for information, to-wit, affidavit of witness, and there had been no motion to quash.   When the statute permits a thing to be done in either one of three ways, an objection that

two of the methods were not followed would be insufficient, for, *non-constat,* the third might have been followed. The case is the same, therefore, as if no motion to quash had been filed in this respect. If no motion had been filed, any defect of this nature, it is quite clear, was waived. (2) Further, it will be observed that the statute permits an information to be predicated on an affidavit filed with the clerk. This affidavit is no more a part of the information than the evidence before a grand jury is part of an indictment. Whether or not there was such an affidavit was a question of fact. A mere allegation in a motion to quash is not proof of the fact. There must be evidence to establish the fact, if it was a fact. The defendants offered no proof on this subject, and, so far as this record shows, there was such an affidavit filed with the clerk, for the law presumes that is done which is required to be done. The trial court having overruled the defendant's motion, it must be presumed he found the facts against defendant's contention. There is nothing whatever in the record from which this court could find an affirmative fact that no affidavit was filed with the clerk. The trial judge having overruled the motion to quash, in the absence of a showing to the contrary, this court will presume that the trial court proceeded regularly and in conformity to the law. State v. Brown, 75 Mo. 317. (3) Even if there had been no affidavit filed with the clerk, as the information is on the official oath of the prosecuting attorney, it is sufficient. The constitutional amendment of 1900 provides for information in felony cases. The Constitution, article 2, section 12, gives the power to file informations in misdemeanor cases. Section 2477, R. S. 1899, provides that all informations shall be verified by the oath of the prosecuting attorney or some one else, etc. This provision has been on the statute books for many years, but was amended so as to include felonies in 1901. The effect of this so-called procedure statute in connection with the Constitution

has been considered by our courts many times in cases
of misdemeanor.   The uniform ruling, with few excep-
tions, has been that the information provided by the
Constitution is the common law information upon the
official oath of the prosecuting attorney, and that when
so filed it is sufficient notwithstanding the statute.
State v. Hart, 47 Mo. App. 654.   The prosecuting at-
torney may file informations upon official oath, not-
withstanding the statute.   State v. Flethall, 31 Mo.
App. 300; State v. Ramsey, 52 Mo. App. 668.   The affi-
davit is immaterial and unnecessary.   State v. Sweeny,
56 Mo. App. 409; State v. Parker, 39 Mo. App. 116.
The prosecuting attorney might have disregarded the
affidavit and filed the information under his oath of
office.   State v. Boggess, 86 Mo. App. 632.   The term,
information, as used in the Constitution (art. 2, sec. 12),
is the common law information, that is such as pre-
sented by the Attorney-General or Solicitor-Gen-
eral of England on his official oath.   No verification is
necessary.   State v. Kelm, 79 Mo. 515.   ''The framers
of the Constitution, by adopting the information of the
common law, conferred the right on prosecuting attor-
neys to file information on their own responsibility.
This right can not be abridged by statute.''   State v.
Ransberger, 106 Mo. 135; State v. Russell, 88 Mo. 648;
State v. Kelm, 79 Mo. 515; State v. Brisco, 80 Mo. 643;
State v. White, 55 Mo. App. 556.   The decisions are
practically uniform that sections 2477 and 2478, provid-
ing a method of procedure in informations, are direct-
ory at most.   Now comes the recent case of State v.
Bonner, 178 Mo. 424, holding that an information is
invalid unless sworn to by some one.   We respectfully
submit that this case is contrary to all the other decis-
ions of this court, and contrary to the Constitution.
The decision in this case assumes that a new question is
presented to the court by section 2477, overlooking the
many decisions construing this very same statute as not

taking away the right of the prosecuting attorney to file information upon official oath. We most respectfully call the court's attention to the numerous cases cited above, construing this very same statute. We insist, in the language of this court in State v. Ransberger, 106 Mo. 135, that the Constitution having given the prosecuting attorney the right to file information upon official oath, the Constitution controls and "the statute can not hamper the prosecuting attorney in his duties by requiring that he should verify it." A power given by the Constitution can not be taken away by statute. The statute can only be directory. (4) The evidence of other offenses of bribery by this defendant in connection with the same members of the combine in the House of Delegates was competent to show the intent with which the defendant entered into the agreement for the money in this case. State v. Balch, 136 Mo. 103; State v. Durham, 73 Minn. 150.

BURGESS, J.—Defendant was convicted in the circuit court of St. Louis, and his punishment fixed at four years' imprisonment in the penitentiary, under an information filed by the circuit attorney of said city charging him and fifteen other members of the House of Delegates of said city, with the crime of bribery.

On motion of the defendant a severance was granted him, his trial resulting in his conviction, as before stated. The case is before us for review upon defendant's appeal.

The facts are about as follows:

"On the 9th day of October, preceding the alleged crime, Council Bill No. 44 was introduced in the City Council. This bill authorized the St. Louis and Suburban Railway Company, a corporation doing a general street railway business in that city, to construct, maintain and operate a general street railroad business upon certain streets, alleys, city blocks and other public places in St. Louis. On the 8th day of February,

1901, this bill was passed by the Council, and immediately referred to the House of Delegates for their action thereupon.

"Immediately after the organization of the House of Delegates, to which Council Bill No. 44 was afterwards referred, an organization was perfected, composed of a considerable number of the members, which organization was afterwards looked upon and considered as a combine in the House of Delegates. The object of this combine was, as stated by several witnesses, to control legislation, by refusing to act upon certain bills that might afterwards come before them in their official capacity, or by acting in a certain designated manner in reference thereto, unless certain sums of money be paid to each of the members of the combine.

"New members were taken into this so-called combine until it reached the number of nineteen. They held frequent sessions in the retiring room of the House of Delegates and at Schnettler's Hall, at the corner of Ninth and Lami streets, St. Louis, where various matters affecting the interests of the combine were discussed and a general agreement made by all of the members to the exact amount that should be required by them in order to bring about the passage or defeat of certain bills then pending in the House of Delegates.

"Sometime during the month of October, 1900, John K. Murrell, who was a member of the House of Delegates, went to one Philip Stock, and stated to him that he represented the House of Delegates, and asked Mr. Stock if he represented the Suburban Railway Company. Stock told Murrell that he had no proposition to offer, but wanted to hear what Murrell had to say. Murrell said that it would require seventy-five thousand dollars to pass Council Bill No. 44, one-half of which was to be paid when the House of Delegates had passed it, and the other half to be paid when it had been signed by the Mayor. Stock told Murrell that he could not

consider a proposition of that character. On the 22d day of October, Murrell went again to Stock's office, where Stock told him the deal was off.

"On the 19th day of November, 1899, Murrell again went to Stock's office and agreed with him that if they would put up seventy-five thousand dollars to be paid to the members of the combine when the bill had passed the House of Delegates and was approved by the Mayor, they would permit it to pass the said House. This matter was taken under advisement, and in a short time Stock telephoned Murrell to meet him at the German Savings Institution, a corporation doing a general banking business in the city of St. Louis. Witness Stock was in no way connected with the Suburban Railroad Company, but, as stated by him on the witness stand, was a friend to Charles H. Turner and other persons who were officers of and connected with that company, and that what he did in relation thereto was as a friend of Turner and others. They met at the office of the German Savings Institution, as prearranged by Charles H. Turner, where the cashier, Hospes, gave Stock a package containing seventy-five thousand dollars. Murrell and Stock then proceeded to the Lincoln Trust Company, where they rented a box and deposited the seventy-five thousand dollars, each reserving to himself a key, with the understanding that the box should not and could not be opened without the presence of both parties and the use of both keys. As usual a password was required, and the word 'carriage' was adopted. This word was adopted because Murrell was in the livery business and being significant of his business would be more easily remembered.

"Council Bill No. 44 failed to become an ordinance, and the matter passed on until April, 1901. An effort was made by Stock and Murrell to settle the difficulty and, if possible, take down the seventy-five thousand dollars, that had been deposited, as above stated. Murrell, on behalf of the combine, demanded one-half of the

amount.   This Stock refused to give, but stated that he would pay him whatever expenses he had incurred and allow him five thousand dollars as attorney's fees. After several attempts were made, Murrell and Stock met on the 18th day of January, 1902, on Third street in the city of St. Louis, and had a conversation in reference to the disagreement that had grown up between them on account of the unlawful attempt to secure the passage of the bill by the House of Delegates.   Murrell told Stock that unless the matter was adjusted in some way it would be referred to the grand jury.   This apparently frightened Stock, for very soon thereafter it came before the grand jury, with the witnesses Stock and Turner furnishing the principal part of the evidence upon which the information was based.

   ''The evidence discloses that the seventy-five thousand dollars was deposited in the Lincoln Trust Company for the criminal purpose of bribing the members of the House of Delegates.   The evidence is also clear that at the time the money was deposited there were nineteen members of the House of Delegates, including the defendant, who had combined with each other to secure the passage or defeat of certain measures which were then or might afterwards be pending before him. The testimony of J. H. Murrell, Geo. F. Robinson and Ed E. Murrell, all of whom were members of the House of Delegates, shows that this combine was created for no other purpose than that of securing money for their official votes for or against pending legislation, where proper arrangements could be made with the parties interested in them.   The testimony shows that the defendant Schnettler was a member of this combine, participated in its deliberations, was a party to the unlawful agreement, and knew at the time the exact interest he had in the seventy-five thousand dollars that had been deposited in the Lincoln Trust Company.''

   The defendant filed a motion in the court below to quash the information, assigning as grounds therefor

that it was not verified either by the oath of the circuit attorney or of some person competent to testify as a witness, nor is it based upon the affidavit of some private person filed with the clerk of the court as required by law, and because the information is indefinite, vague and uncertain, and charges no offense under the laws of this State.

The motion was overruled and defendant duly excepted.

It was held in the recent cases of State v. Bonner, 178 Mo. 424, that after the amendment of the Constitution of November 8, 1900, providing that indictments and informations should thereafter become concurrent methods for the prosecution of felonies, after which section 2476, Revised Statutes 1899, was amended so as to provide that all felonies should be "prosecuted by indictment or information except," etc.; and section 2477, was amended by the Act of March 13, 1901, so as to require that informations should be verified by the oath of the prosecuting attorney, or of some person competent to testify, or be supported by affidavit of such person, filed with the information, where after the passage of such amendment, an information for a felony was filed by the prosecuting attorney of the county against defendant, not verified by his oath, or the oath of any other person competent to testify, or supported by affidavit, and defendant moved to quash the information for such defect before verdict, the overruling of such motion was error. [State v. Balch, 178 Mo. 392.]

The Bonner case was reviewed and approved in the more recent case of State v. Brown, 181 Mo. 192.

The omission to verify the information by the circuit attorney was simply an irregularity, did not render it or the proceedings under it void, and might have been amended at any time before trial by leave of court. It is axiomatic that a legal proceeding which is simply irregular is amendable, but even if this rule does not apply here, it is expressly provided by section 2481, Re-

vised Statutes 1899, that "any affidavit or information may be amended in matter of form or substance at any time by leave of court before the trial, and on the trial as to all matters as to form and variance, at the discretion of the court, when the same can be done without prejudice to the substantial 'rights of the defendant.'' It is, therefore, perfectly clear that the information was not void, and might have been amended by the circuit attorney by leave of court at any time before trial had, if so desired. If, however, such objection is not raised on or before trial, it will be waived and can not be raised for the first time in this court.

But it is said by the circuit attorney that there was nothing said in the motion to quash as to the information not being based on the affidavit of some competent witness. The language used on this question in the motion to quash is, "The information herein is not predicated upon an affidavit filed with the clerk of the court or deposited with the circuit attorney and sworn to by a person who has knowledge of the commission of the offense herein charged against the defendant." This language can only be construed as meaning that no such affidavit had in fact been filed. When an information is supported by the affidavit of some person competent to testify in the case, the statute requires that the affidavit shall be filed with the information, and it is made the duty of the prosecuting attorney to file an information, as soon as practicable *upon* said affidavit. [Secs. 2477, 2478, R. S. 1899.] If, as the statute says, it shall be the duty of the prosecuting attorney to file an information *upon* the affidavit, and then file the affidavit with the information, the latter should show upon its face, when such is the case, that it is predicated upon the affidavit filed with it; otherwise how is the defendant to know who his accusers are, the prosecuting attorney, or some other person? The very object of the statute in requiring the prosecuting attorney to file an information *upon* the affidavit, and to *file* it with the information, was to

avoid this difficulty, by predicating the information upon the affidavit and showing upon its face that such is the case.   But this information makes no allusion whatever to an affidavit; upon the contrary, it plainly and unequivocally shows upon its face that it was filed by the circuit attorney, as informant, upon his official oath alone, and not upon an affidavit of a competent witness, and upon its face shows that it was not verified by such a witness.

But it is again contended by the circuit attorney that whether an affidavit was in fact filed, was a question of fact, and that as defendant offered no proof on this subject, and, so far as the record shows there was such an affidavit filed with the clerk, the law presumes that is done which is required to be done.   It is clear to our minds that this argument can not be sustained, either upon reason or authority, and for the following reasons:   In the first place, the law imposes no duty upon any person to file an affidavit under such circumstances, and it is only where some duty is imposed by law, that the presumption will be indulged that the duty was performed.   But the law *does* impose upon the circuit attorney the duty of filing an information *upon* the affidavit when one is filed, and, to file it with the information, so the presumption must be indulged that as an officer he did his duty, and if there had been an affidavit filed he would have filed it with the information and based the latter upon it.   The record in some way ought to show the filing of an affidavit, and the filing of an information thereon, if in fact such was the case, and in the absence of such showing it did not devolve upon the defendant to show that no affidavit was filed, thus imposing upon him the proof of a negative.

It is said for defendant that the information is invalid for the reason that it is indefinite and uncertain, and because it charges no offense under the law.   In support of this contention defendant relies upon the case of the State v. Meysenburg, 171 Mo. 1, and, while it is

asserted that the information in the case at bar, in its charging parts, is on all fours a copy of the indictment in that case, it is not intimated or suggested, otherwise than in this general way, wherein it is defective.

The information alleges the existence of the city of St. Louis as a municipal corporation; the distribution of its powers; the provisions of its charter providing for and creating the Council and House of Delegates as the legislative department, styled the Municipal Assembly of St. Louis; the power of the Council and House of Delegates; that the defendant was a member of the House of Delegates at the time of the alleged bribery; the pendency of Council Bill Number 44 before the Council; the purpose of said bill, and its pendency before the House of Delegates, of which defendant had knowledge; that he willfully and feloniously agreed with the St. Louis and Suburban Railroad Company, and its officers and agents, to cast his vote in his official capacity in favor of the passage of said bill; said vote to be cast by him in his official capacity, as a member of the House of Delegates of the Municipal Assembly of the city of St. Louis, and that the agreement made by him was to the effect that he should, for a monetary consideration, cast his official vote, in his official character, in favor of the passage of said council bill by the House of Delegates.

The indictment in the Meysenburg case did not allege that the money received was for a purpose which would make it bribery under section 2085, Revised Statutes 1899, in that it no where alleged that said money was received by Meysenburg on an agreement either that his vote, decision or opinion would be given in a particular manner, that is, to say, in favor of the passage or enactment of said Council Bill No. 44. The general charge was made that he would perform his official public duty in the consideration of said bill or measure with partiality and favor and otherwise than according

to law.    GANTT, J., in speaking for the court in that case, said:

"The crime is statutory and it is essential that it should charge with certainty and precision all the facts necessary to constitute the offense, and must conform to the language or state all the facts which bring it within the terms of the statute.    [State v. Kesslering, 12 Mo. 565; State v. Davis, 70 Mo. 467; 5 Cyclopedia of Law and Procedure, 1042, and cases cited.]    In a word, the indictment must, on its face, by plain allegations, not by inference merely, charge some act described by the statute as constituting bribery.    Instead of so charging, the indictment proceeds to aver that said nine thousand dollars was paid to said Meysenburg 'upon the express understanding and agreement between the said Emil A. Meysenburg and the said Philip Stock that unless and until the said sum of nine thousand dollars was so paid by the said Philip Stock to the said Emil A. Meysenburg as the said pretended and ostensible price, consideration and value of the said shares of stock, he, the said Emil A. Meysenburg, as a member of said Council and in his official capacity and character as aforesaid, would and should oppose, resist, withstand, thwart, and defeat the passage and enactment of said measure, matter, cause and proceeding and of the said proposed ordinance, then and there pending before the said Council,' etc.

"Now these words do not plainly charge an agreement for favorable or partial action in favor of the bribe-giver Stock or his principal, the Suburban Railway, but a threat to oppose, resist, withstand, and defeat the bill or ordinance 'unless and until' he was paid. Learned counsel for the State, however, insist that this is tantamount to an allegation of a promise of official favor, to-wit, 'desistance from opposing,' resisting, etc., the proposed legislation; that it was in effect a direct statement that defendant was opposing the measure and

that he agreed in consideration of the $9,000 to cease said opposition.''

The information in this case avers that, ''as and for a consideration, payment and bribe to the said Otto Schumacher, Charles J. Denny, Charles F. Kelly, John H. Schnettler, William M. Tamblyn, Louis Decker, Charles A. Gutke, Adolph Madera, Henry A. Faulkner, Emil Hartmen, Edmund Bersch, John Helm, John A. Sheridan, Julius Lehman, T. E. Albright and Jerry J. Hannigan, for their votes, for and in favor of the passage of said ordinance by the said House of Delegates, contrary to the form of the statute,'' etc.

The information in this case directly charges that the agreement was made by the defendants therein named and with the Suburban Railway Company that the said company would pay to the said defendants the sum of seventy-five thousand dollars upon consideration and agreement that they, the defendants, would cast their official vote as members of the House of Delegates in favor of the passage of said Council Bill number 44. By this charge nothing is left for implication or intendment. It is plain, clear and direct, and fully meets all criticisms pertinent to the indictment in the Meysenburg case.

Over the objection of the defendant the State was permitted to prove that the defendant had received two thousand five hundred dollars as a bribe to induce him to cast his official vote in favor of a bill previously pending before the House of Delegates affecting the lighting of the public streets of St. Louis, commonly known as the Lighting Bill, or in other words the ''Lighting Deal.''

The authorities all hold that as a general rule the State can not prove against a defendant the commission of offenses other than the one charged and for which he is upon trial; but an exception exists with respect to this rule where the collateral crime is brought into a common system, a system of mutually dependent

crimes, or is so linked to the crime under trial as to show that it is part of the same scheme or understanding, or in some way have some logical connection with the crime charged.    [State v. Tabor, 95 Mo. 585.]

In the case of State v. Spray, 174 Mo. 569, the authorities upon the subject were ably and exhaustively reviewed by Fox, J., and it was ruled that in order to the admission against a defendant upon trial of evidence of other crimes than the one for which he is being tried, such crimes must have some logical connection with the crime charged.

In State v. Greenwade, 72 Mo. 298, it was held that where two or more offenses are connected under such circumstances as together to constitute a single and continuous accomplishment of a fixed and common design, evidence of both is admissible upon a trial for one. [State v. Collins, 181 Mo. 235.]

In the case of People v. Molineux, 168 N. Y. 264, the rule is clearly stated as follows:

"Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish: first, motive; second, intent; third, the absence of mistake or accident; fourth, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; fifth, the identity of the person charged with the commission of the crime on trial."

In speaking of the celebrated case of Hester v. Commonwealth, 85 Pa. St. 139, which is known as one of the "Molly Maguire" cases, in the Molineux case, the court said:    "The defendants were on trial for a murder which had been preceded by a highway robbery in which they were implicated.    Evidence was received to show that the defendants were members of a secret society which had for its object the commission of various crimes, such as beatings, arsons, robberies and murders, and the protection of its members from arrest and punishment by secreting them, aiding them to escape,

and otherwise.   This was held to be competent to show that the crime charged was within the scope of the purposes for which the conspirators were banded together and to explain and corroborate other testimony which bore directly upon the commission of the crime charged.''

It appears from the evidence that about the time of the organization of the House of Delegates a combination was entered into between various members of that body, including the defendant, for the purpose of controlling legislation by the members of the combine demanding and receiving a money consideration for the passage or defeat of certain bills which might be brought before them, to be paid by the individuals, corporations or parties interested therein, and that defendant did in fact receive the sum of two thousand five hundred dollars on account of his vote on the lighting deal.   This arrangement was not only with respect to the lighting deal in which he received two thousand five hundred dollars for his vote, but it applied to all other matters of a similar character which might come before the House of Delegates, and was, therefore, part of the same scheme, or arrangement, and logically connected with the charge in the information, hence formed an exception to the general rule, and the facts in respect thereto were admissible in evidence for the purpose of showing that the crime charged was within the scope of the purpose for which the conspirators were banded together, and to explain and corroborate other testimony which bore directly upon the commission of the crime charged.

It is said for defendant in a general way that the instructions given by the court are broader than the information, and comment on the evidence, but in what particular we are unadvised, nor do we think such objection well taken.

For these intimations the judgment is reversed and the cause remanded.   All concur.