STATE OF MISSOURI, Respondent, v. SANTHUFF, Appellant.

**St Louis Court of Appeals, May 12, 1908.**

1. **APPELLATE PRACTICE: Motion for New Trial.** The omission of the trial court to rule on a motion to quash an information under which the appellant was convicted, will not be reviewed on appeal where the omission was not called to the attention of the trial court in a motion for new trial.

2. **CRIMINAL PRACTICE: Information: Mistake in Record.** In a prosecution for criminal libel where the record by mistake showed the filing of a second amended information when in fact one was never filed, the cause should not be reversed on the ground that the defendant was convicted on an information not filed, since it is apparent that the trial and conviction were on the first amended information.

3. ———: **Affidavit: Information.** An affidavit upon which an information is based need not be as complete technically as the information; it is sufficient if it states the elements of the offense.

4. **CRIMES AND PUNISHMENTS: Libel: Misdemeanor.** Charging one with adultery by distributing printed circulars, is libel, punishable as a misdemeanor under sections 2863 and 2260, Revised Statutes 1899.

5. ————: ————: ————. One may be convicted of criminal libel for printing and distributing a circular, notwithstanding the printer made verbal corrections in the circular as originally written by the libeler.

Appeal from Reynolds Circuit Court.—*Hon. Jos. J. Williams,* Judge.

AFFIRMED.

*Williams & Rollins* for appellant.

*George D. Sloan,* Prosecuting Attorney, for respondent.

STATEMENT.—This defendant was convicted of publishing a criminal libel accusing M. G. Harrison, a citizen of Reynolds county, of having lived in adultery. The prosecution was on an amended information filed by the prosecuting attorney which reads as follows:

"George D. Sloan, prosecuting attorney within and for the county of Reynolds, State of Missouri, upon the affidavit of M. G. Harrison, informs the court that Eliza Santhuff, on the ———— day of March, 1906, at the county of Reynolds, in the State of Missouri, contriving and intending maliciously to defame one M. G. Harrison, to provoke him to wrath, expose him to public hatred and deprive him of the benefits of public confidence and social intercourse, did then and there maliciously make, compose, write and wilfully and maliciously publish of and concerning the said M. G. Harrison a false, malicious and defamatory libel in the form of a circular letter or communication in writing and in print tending to provoke him to wrath, expose him to public hatred and contempt and deprive him of the benefits of public confidence and social intercourse, in a certain

part of which circular letter there were and are contained certain false and libelous statements of and concerning the said M. G. Harrison, according to the tenor and effect following, that is to say: 'And much rather my purse would be robbed than to be robbed of my grades as my character which can be established from childhood to the present day. And while they are getting so smart I can inform Mr. G. Harrison (meaning the said M. G. Harrison) that I've never lived in adultery as he has.' Which said libel the said Eliza Santhuff did then and there wilfully and maliciously publish by causing the same to be delivered to one Wm. Brawley and read by him the said Wm. Brawley and divers other good citizens and was so understood by the said Brawley and other parties, having access to the same, to the great scandal and disgrace of the said M. G. Harrison and against the peace and dignity of the State."

Said information was based on this affidavit:

"M. G. Harrison, being duly sworn, on oath deposes and states that Eliza Santhuff, on the —— day of March, 1906, at the county of Reynolds in the State of Missouri, contriving and intending maliciously to defame one M. G. Harrison, to provoke him to wrath, expose him to public hatred and deprive him of the benefits of public confidence and social intercourse, did then and there maliciously make, compose, write and wilfully and maliciously publish of and concerning the said M. G. Harrison, a false, malicious and defamatory libel in the form of a circular letter or communication in writing, tending to provoke him to wrath, expose him to public hatred and contempt and to deprive him of the benefits of public confidence and social intercourse, in a certain part of which circular letter there were and are contained false and libelous statements of and concerning the said M. G. Harrison, according to the tenor and effect following, that is to say:

" 'And would much rather my purse would be robbed than to be robbed of my grades as my character which can be established from childhood to the present day. And while they are getting so smart I can inform M. G. Harrison that I've never lived in adultery as he has.'

"Which said libel the said Eliza Santhuff did then and there wilfully and maliciously publish by causing the same to be delivered to one Wm. Brawley, and read by him the said Wm. Brawley and divers other good and worthy citizens, to the great scandal and disgrace of the said M. G. Harrison and against the peace and dignity of the State of Missouri."

The original information was filed May 10, 1906, and was based on an affidavit of M. G. Harrison, similar in tenor to the information itself, which differs slightly from the amended information filed May 30th. A motion was filed the same day to quash the amended information, which motion was continued to the November term of the court. The record shows no ruling on it, but states that on November 26, 1906, an amended information was filed, and immediately thereafter says the only document filed on said day was the amended affidavit of M. G. Harrison, the prosecuting witness. This amended affidavit differs only in unimportant particulars from the one first filed. It corresponds in facts and language with the amended information as the first information corresponds with the first affidavit. The particular charge which is the subject-matter of the offense laid in the information, is contained in a document too long to copy, which defendant had printed as a circular or hand bill and distributed to numerous citizens of Reynolds county. At the time, Harrison was a candidate for nomination by the Democratic party for the office of school commissioner of said county, and the purpose of defendant in distributing the circular was to impair his chance of being chosen by the people in the primaries. The grievance was that defendant

had been refused a certificate to teach school by Harrison and others whom she designates in her letter as the "County Board of Education." The circular is a rambling paper, filled with incoherent accusations of unfairness and prejudice in grading applicants for certificates to teach. As illustrative of its spirit we will copy the closing paragraphs containing the charge of adultery.

"And should anybody criticise the way this Co. board grades or not? All other boards that ever knew anything about while grading sit down together and discussed between themselves about what is fair and right to give the answers to the questions which is the proper way without a doubt. But instead of following the method they tell me each one takes a certain part of the work and get off to themselves and grade separately. Well well it is not supposed that each one knows all about everything. And again it is not supposed that a board will give entire satisfaction all around. But it is supposed that they should be conscience fair minded men and women at all times and all occasions willing to do their duty and give justice to everybody while grading. So it doesn't matter how many big flowery tales they try to tell to justify themselves about this matter I have evidence to prove everything that I've told about this case and so I shall conclude by saying it is a case of dealing with anybody as if they were a dog instead of doing as you would wish to be done by.

"And would much rather my purse would be robbed than to be robbed of my grades as my character which can be established from childhood to the present day. And while they are getting so smart I can inform Mr. G. Harrison that I've never lived in adultery as he has nor never been wild and ratling as O. H. Hargrove has as I've told him he was simply too young to have the judgment that a man should have for that place.

"And furthermore if I didn't know more than that

board did I would know much as some of them never has been in a high school yet. And think I've been through the science halls about as many time as any of that outfit ever has. However have spent most a lifetime in the work. And I am a citizen and a tax payer and don't see why I shouldn't have justice as same as anybody else. And all that those Co. normals are calculated to do is to brake other institutions and lower the standard of education and coin money in a few individual hands."

No attempt was made to prove Harrison had lived in adultery. In truth the defendant introduced no evidence and attempted no defense, but relied on the supposed failure of the State to establish a case, the alleged insufficiency of the information and the affidavit it is based on, and other points of a technical sort.

GOODE, J. (after stating the facts).—1. Neither the motion for new trial nor the motion in arrest of judgment called attention to the omission to rule on defendant's motion to quash the amended information. Therefore, without further inquiry, we overrule the error assigned for this omission.

2. Defendant asserts she was tried and convicted on either an information never filed, or on the second affidavit. It is plain the trial was on the amended information; that no other was filed or intended to be, but the entry of November 26th, stating the filing of a second amended one was a mistake and should have been a recital of the filing of the amended affidavit of Harrison. In the brief for defendant it is conceded no second amended information was filed, and this assignment of error is without merit.

3. The first affidavit was ample as a basis for both the original and the amended information. Such an affidavit need not be as complete technically as the

131 App.—40

information.    Its purpose is to prevent hasty and ill-advised action by requiring a prosecuting attorney, before he files an information charging a person with crime, to have proof by a citizen's oath, that a crime has been committed, and also to be able to exhibit to the person charged the names of his accusers.    [State v. Schnettler, 181 Mo. 173, 79 S. W. 1123; State v. Brown, 181 Mo. 192, 79 S. W. 1111; State v. Runzi, 105 Mo. App. 319, 79 S. W. 992.]    It is enough if an affidavit states the elements of an offense.    [State v. Cornell, 45 Mo. App. 94.]

4.    Imputing adultery to Harrison by distributing printed circulars and causing them to be read, was a libel by express statutory enactment.    [R. S. 1899, sec. 2863.]    And is punishable as a misdemeanor.    [R. S. 1899, sec. 2260.]    Beyond doubt defendant published the charge broadcast.    She told the printer to send about a hundred copies of the circular to one postmaster in the county for distribution, to send them to three or four other postmasters, she paying the postage, and besides, she distributed copies herself.    It is argued the criminal offense of libel was not committed because the paper circulated by defendant did not charge Harrison with sufficient particularity with having lived in a state of open and notorious adultery.    In other words, failed to make the charge in such terms as would amount to accusing him of a crime under section 2175 of the statutes.    It is not essential in order for defamation of character by publication to be libelous, that the published matter should impute a crime to the person defamed.    The statutes define the tort as follows:

"A libel is the malicious defamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, or any malicious defamation

made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke surviving relatives and friends." [R. S. 1899, sec. 2259.]

The libelous document must be published by delivery, selling, reading or otherwise communicating it, or causing this to be done. [R. S. 1899, sec. 2261.]

5. We are cited to decisions on the proposition that in a case of libel the proof must agree with the indictment in every particular essential to identity; such as dates, names and the alleged libelous words used. [State v. Fitzgerald, 20 Mo. App. 408; 1 Greenleaf, Evidence, sec. 167.] Counsel are not explicit regarding the use they wish us to make of said rule of law in the present case; but as we glean from their brief, they consider it relative to certain testimony of the man defendant hired to print the circular. This witness testified that in printing the document he corrected some bad spelling in the original writing, and where a word like "in" or "and" had been omitted, inserted it. Hence it is suggested the document prepared by defendant differed from the one printed and distributed. It is enough to say on this point, defendant distributed the circular and caused it to be read as it was printed, and as printed it agreed exactly in the libelous portion with the charge in the information.

We find no error in the record and the judgment will be affirmed. All concur.